**No. 24-1822**

# United States Court of Appeals for the Federal Circuit

**CONSTELLATION DESIGNS, LLC**

***Plaintiff-Appellee,***

***v.***

**LG ELECTRONICS INC., LG ELECTRONICS U.S.A., INC., LG ELECTRONICS ALABAMA, INC.**

***Defendants-Appellants***

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS IN CASE NO. 2:21-CV-00448-JRG

**COMBINED PETITION FOR PANEL REHEARING AND REHEARING EN BANC OF DEFENDANTS-APPELLANTS**

Michael J. McKeon
Christian A. Chu
R. Andrew Schwentker
Michael J. Ballanco
Benjamin J. Christoff
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W.
Suite 1000
Washington, DC 20024
Tel: (202) 783-5070

Ashley A. Bolt
FISH & RICHARDSON P.C.
1180 Peachtree Street NE
21st Floor
Atlanta, GA 30309
Tel: (404) 492-5008

June 29, 2026

*Attorneys for Defendants-Appellants*

# CERTIFICATE OF INTEREST

Counsel for Defendants-Appellants LG Electronics Inc., LG Electronics U.S.A., Inc., and LG Electronics Alabama, Inc. (collectively, "LG") certifies the following:

1. Provide the full names of all entities represented by undersigned counsel in this case.

   **LG Electronics Inc., LG Electronics U.S.A., Inc., LG Electronics Alabama, Inc.**

2. Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

   **None/Not Applicable.**

3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

   **LG Corporation, LG Electronics Inc., LG Electronics U.S.A., Inc.**

4. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   **Fish & Richardson P.C.: Bailey K. Benedict, Claire Chang, Elizabeth Ranks, Ilya "Eli" Svetlov, Leeron G. Kalay, Meghan Thadani, Ruffin B. Cordell, Ryan M. Teel*, Joshua P. Carrigan, and Thomas H. Reger, II**

   **Gillam & Smith, LLP: Melissa R. Smith**

   * *No longer with firm.*

5. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

   **No.**

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

**None/Not Applicable**

Dated: June 29, 2026

*/s/ Michael J. McKeon*
Michael J. McKeon

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..... i

TABLE OF AUTHORITIES ..... iv

STATEMENT OF COUNSEL UNDER FED. CIR. RULE 40(c) ..... 1

INTRODUCTION ..... 2

RELEVANT BACKGROUND ..... 4

ARGUMENT ..... 6

I. The One-Size-Fits-All Approach Accepted by the Panel Opinion Fails the Apportionment Mandate ..... 6

A. The Panel Opinion Pushes the "Built-In Apportionment" Exception Past Its Breaking Point ..... 6

B. The Zenith Licenses Are Not Sufficiently Comparable to the LG-Constellation Hypothetical Negotiation License ..... 11

II. The Panel's Ineligibility Rulings Require Setting Aside the Damages Verdict ..... 17

CONCLUSION ..... 19

CERTIFICATE OF SERVICE AND FILING ..... 21

CERTIFICATE OF COMPLIANCE ..... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABS Glob., Inc. v. Cytonome/ST, LLC*,
984 F.3d 1017 (Fed. Cir. 2021) ........................................19

*ADASA Inc. v. Avery Dennison Corp.*,
55 F.4th 900 (Fed. Cir. 2022) ........................................13

*Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015) ........................................10

*EcoFactor, Inc. v. Google LLC*,
137 F.4th 1333 (Fed. Cir. 2025) ........................................10, 16

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ........................................9, 11

*Garretson v. Clark*,
111 U.S. 120 (1884)........................................6

*Jiaxing Super Lighting Elec. Appliance, Co. v. CH Lighting Tech. Co.*,
146 F.4th 1098 (Fed. Cir. 2025) ........................................9, 16

*Koon v. United States*,
518 U.S. 81 (1996)........................................10

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ........................................12, 13

*Omega Patents, LLC v. CalAmp Corp.*,
920 F.3d 1337 (Fed. Cir. 2019) ........................................17

*Omega Patents, LLC v. CalAmp Corp.*,
13 F.4th 1361 (Fed. Cir. 2021) ........................................*passim*

*Optis Cellular Tech., LLC v. Apple Inc.*,
139 F.4th 1363 (Fed. Cir. 2025) ........................................18

*Ortiz v. Jordan*,
562 U.S. 180 (2011)........................................11

*Pavo Sols. LLC v. Kingston Tech. Co.*,
35 F.4th 1367 (Fed. Cir. 2022) ....................10

*Rex Med., L.P. v. Intuitive Surgical, Inc.*,
156 F.4th 1289 (Fed. Cir. 2025) ....................9, 16

*Vectura Ltd. v. Glaxosmithkline LLC*,
981 F.3d 1030 (Fed. Cir. 2020) ....................7, 10

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
503 F.3d 1295 (Fed. Cir. 2007) ....................17

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) ....................14, 16

*Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*,
609 F.3d 1308 (Fed. Cir. 2010) ....................16

**Statutes**

35 U.S.C. § 101 ....................12, 17

**STATEMENT OF COUNSEL UNDER FED. CIR. RULE 40(c)**

Based on my professional judgment, I believe the panel decision is contrary to the following decision(s) of the Supreme Court of the United States or the precedent(s) of this court:

- *Garretson v. Clark*, 111 U.S. 120 (1884);
- *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012);
- *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014);
- *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308 (Fed. Cir. 2014); and
- *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361 (Fed. Cir. 2021).

## INTRODUCTION

This petition presents an important patent damages law question: whether a patentee may recover a royalty covering an entire technology rather than the value of the patent claims it actually asserts. The panel held that it may. And the panel surprisingly held so for a damages award built on a third party's decades-old portfolio rate to an incompatible technology that did not change with the number of patents infringed, and treated that rate as reflecting the apportioned value of Constellation's asserted claims. That holding cannot be reconciled with the apportionment requirement the Supreme Court and this Court have long enforced.

The panel broke with settled law in multiple ways. First, it accepted a flat, patent- and claim-indifferent rate as a substitute for apportionment, thereby expanding the narrow "built-in apportionment" exception beyond the clear limits this Court confirmed in *Omega*. Second, it treated a bare finding of "comparability" as sufficient, even though the licenses on which the rate rested—directed to a third-party's decades-old licenses to different patents covering a different technology and product mix—were not sufficiently comparable to the hypothetical negotiation or apportioned to the asserted claims.

The panel compounded these errors by refusing to set aside the jury's damages award despite invalidating over half of the asserted claims underlying that award. That is, after holding five out of the nine asserted claims from two of the four patents-

in-suit ineligible, the panel declined to vacate the jury's single, undifferentiated damages award. The panel's support for this unusual outcome is Constellation's expert's legally impermissible testimony that the value of Constellation's asserted patents "was tied to the *technology* rather than any asserted patent or claim," and a forfeiture finding that contravenes the plain record. Op. 31 n.4 (original emphasis).

The consequences are concrete. The panel sustained a $6.75-per-television rate for Constellation's remaining four claims across two asserted patents—more than double what patent pools charge to license the same standard. The Avanci pool licenses more than 11,000 ATSC 3.0-declared patents for $2-3 per unit, and the MPEG LA/VIA LA pool licenses 53 patents for $2.75 per unit. Appx20278-20279; Appx20393-20394; Appx20397. The disparity is large enough that LG publicly halted selling ATSC 3.0-compatible televisions in the United States rather than pay that rate. Dkt. 23 at 14-15.

The panel's opinion, if left undisturbed, threatens to eviscerate decades-old apportionment precedent and would permit damages that far exceed the incremental value of patents asserted in litigation. The panel's damages holdings conflict with precedent, and raise questions of exceptional and recurring importance. The Court should grant panel rehearing or rehearing en banc.

## RELEVANT BACKGROUND

Constellation accused LG's ATSC 3.0-compatible televisions. Appx20273 (14:17-24). Constellation's technical expert testified that one chip allegedly implements Constellation's patents in these televisions, Appx20216 (86:25-87:11), but conceded that they include many unaccused technologies and features. Appx20216 (86:15-20); Appx20240-20241 (184:3-185:8); Appx20291 (85:22-86:19); Appx20322 (211:25-212:12). Constellation's damages expert, Ryan Sullivan, opined that LG owed $1,684,469 in past infringement damages. Appx20280 (42:8-10). Although the past damages amount may be perceived as low, Sullivan's royalty rate was high—$6.75 per television—and the district court adopted this rate in imposing an ongoing forward-looking royalty. Appx20273 (15:2-3); Appx83-86. Sullivan derived this rate from a $5 per-unit rate from three licenses granted by third-party Zenith.[1] Appx20274-20275 (19:16-21:11); Appx20276 (27:7-24); Appx17112-17127; Appx16578-16611; Appx17128-17142. Sullivan used these Zenith licenses even though they involved a different licensor (Zenith), preceded the hypothetical negotiation by about 15 years, and covered a different technology, vestigial sideband ("VSB") signal modulation. Appx20248 (213:15-17, 214:5-9); Appx20274-20275 (19:16-21:11); Appx20277 (32:18-23).

[1] Zenith is an LG subsidiary but is not a named party in this case. Appx20264 (277:5-9).

Sullivan then *increased* Zenith's $5 per-unit rate to $6.75 based on general CPI inflation. Appx20277 (31:1-7); Appx20278 (33:20-22); Appx20285 (64:16-21).

The jury adopted Sullivan's exact damages amount. Appx38. The district court denied LG's pre- and post-trial motions on damages, and adopted Sullivan's $6.75-per-unit rate as an ongoing royalty. Appx20058 (227:11-228:15); Appx43-52; Appx78-82; Appx83-86. LG appealed, challenging the district court's denial of LG's *Daubert* motion and LG's JMOL of no damages based upon Constellation's failure to apportion.

The panel rejected LG's damages challenges. Treating LG's *Daubert* and JMOL challenges as singular, the panel held that Sullivan permissibly relied on a "built-in apportionment" theory. Op. 30. The panel reasoned that Sullivan had sufficient basis for finding the Zenith licenses comparable and, therefore, allowed Sullivan's built-in apportionment opinion to stand. Op. 30-31. In a footnote, the panel declined to vacate the damages award even after holding the asserted claims of two patents-in-suit ineligible, reasoning that Sullivan had testified that the value of Constellation's asserted patents "was tied to the *technology* rather than any asserted patent or claim" and that LG had forfeited the issue. Op. 31 n.4 (original emphasis).

# ARGUMENT

## I. The One-Size-Fits-All Approach Accepted by the Panel Opinion Fails the Apportionment Mandate

### A. The Panel Opinion Pushes the "Built-In Apportionment" Exception Past Its Breaking Point

The panel held that Constellation could satisfy the apportionment mandate through built-in apportionment, writing that "Sullivan had a sufficient basis for relying on a built-in apportionment theory" because "evidence supports that the Zenith licenses were sufficiently comparable." Op. 31. That reasoning collapses two distinct inquiries into one. Even assuming the Zenith licenses were comparable enough to be candidates for built-in apportionment—which they were not, *see* Section I.B—comparability alone does not establish apportionment. Constellation still had to show that the Zenith portfolio rate was apportioned to the specific Constellation patent claims asserted in this case. Blue Br. 58-61; Reply Br. 24-26; 32-33. It never did, which the panel did not scrutinize because it accepted that the value of Constellation's asserted patents "was tied to the *technology* rather than any asserted patent or claim." Op. 31 n.4 (original emphasis).

The panel's holding cannot be reconciled with apportionment precedent. *See, e.g.*, *Garretson v. Clark*, 111 U.S. 120, 121 (1884). This Court has explained that "when a sufficiently comparable license is used as the basis for determining the appropriate royalty, further apportionment may not necessarily be required," but only because "[b]uilt-in apportionment effectively assumes that the negotiators of a

comparable license settled on a royalty rate and royalty base combination embodying the value of the asserted patent." *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1376-77 (Fed. Cir. 2021) (quoting *Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 1040-41 (Fed. Cir. 2020)). The doctrine relieves a patentee of separate apportionment *only* when the comparable license already reflects the value of the *asserted* patents. Where the rate does not, there is nothing "built in," and ordinary apportionment principles apply: the patentee must "account for substantial 'distinguishing facts' between the proffered licenses and a hypothetical negotiation," including the number of patents at issue. *Omega*, 13 F.4th at 1380.

The record forecloses any assumption that the Zenith rate embodies the value of Constellation's asserted patents. To support built-in apportionment, the panel recognized testimony that "the Zenith licenses were structured to provide a single royalty rate regardless of the number of Zenith patents found to be infringed." Op. 30; *see also* Op. 31-32 n.4. Rather than supporting built-in apportionment, however, this static rate demonstrates the opposite. A "one-size-fits-all" rate that remains fixed no matter how many patents are practiced is—by definition—untethered from the value of any particular patent. Such a rate cannot "embod[y]

the value of the asserted patent," *Omega*, 13 F.4th at 1377, because it is indifferent to which patents are infringed.[2]

This Court confronted that precise flaw in *Omega*. There, the patentee's expert advanced a $5.00-per-unit rate, testifying that the infringer "should pay the same rate no matter how many claims or how many of the patents it infringes." *Id.* at 1379. This Court held that the patentee's "fundamental problem [wa]s that it failed to show that these agreements attributed a $5.00-per-unit royalty to the value of the [asserted] patent," and that, "absent evidence … to support an identical $5.00 rate for a one-patent license," it could not "see how this patent/claim-independent approach accounts for apportionment." *Id.* The damages theory the panel approved here is the same patent/claim-independent approach the Court previously rejected. Constellation applied the Zenith-portfolio rate without regard to which or how many patents that portfolio contained, and carried it into a hypothetical negotiation over an unrelated set of patents—making only a single, 35% *upward* adjustment to the rate for inflation. Appx20277 (31:1-7); Appx20278 (33:20-22); Appx20285 (64:16-21). *Omega* and the panel's opinion cannot be squared.

There are two defects with the Court's holding that the panel did not confront. First, the Zenith portfolio rate had to be allocated among the many patents within

[2] Had Zenith sued for patent infringement, it too would have needed to apportion to actual claims asserted to prove the damages for that suit.

the Zenith portfolio before it could be attributed to any infringing feature. Comparable licenses routinely "may cover more patents than are at issue," and "[t]estimony relying on licenses must account for such distinguishing facts when invoking them to value the patented invention." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014). For that reason, this Court has repeatedly held that "expert testimony should be excluded when it fails to allocate license fees among the licensed patents covered by an agreement." *Jiaxing Super Lighting Elec. Appliance, Co. v. CH Lighting Tech. Co.*, 146 F.4th 1098, 1112 (Fed. Cir. 2025) (citations omitted); *see also Rex Med., L.P. v. Intuitive Surgical, Inc.*, 156 F.4th 1289, 1298 (Fed. Cir. 2025) (affirming exclusion of damages testimony that "fail[ed] to allocate license fees among the licensed patents covered by [the] agreement"). Second, having isolated whatever value was attributable to the relevant Zenith patents, Constellation still had to map that value onto its own asserted patent claims. It did neither. As in *Omega*, even if the Zenith rate apportioned between Zenith's patented technology and the unpatented features of the licensed products, Constellation made no showing connecting that rate to the value of the specific Constellation patents at issue. *See* 13 F.4th at 1379-81.

The panel's decision creates a chasm in this Court's built-in apportionment precedent. The Court has previously applied the doctrine almost exclusively to situations where the relied-upon license included the asserted patent itself, or at least

its specific technology. *See Vectura*, 981 F.3d at 1040-41; *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015); *Pavo Sols. LLC v. Kingston Tech. Co.*, 35 F.4th 1367, 1380 (Fed. Cir. 2022). Until now, no decision of this Court has sanctioned built-in apportionment based upon a third-party's decades-old licenses to an entirely different set of patents covering an entirely different technology and different products. The panel's holding extends a narrow, carefully cabined exception to circumstances this Court has never approved. In so doing, the panel relieved Constellation of its burden to prove that its damages were apportioned. *See Omega*, 13 F.4th at 1377.

Importantly, whether a "one-size-fits-all" portfolio rate can supply built-in apportionment is a legal question, and *Omega* conclusively holds it may not. The panel sidestepped this legal error by recasting LG's challenge as a question of admissibility reviewed for abuse of discretion. Op. 29-30 (citing *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1338 (Fed. Cir. 2025) (en banc)).[3] But legal error is legal error. And LG clearly appealed this legal error under both JMOL and *Daubert*. *See* Blue Br. 54. Even under the deferential abuse-of-discretion standard, legal error cannot stand. *See Omega*, 13 F.4th at 1375; *Koon v. United States*, 518 U.S. 81, 100

[3] The full Court recently underscored the rigor that Rule 702 demands of comparable-license damages testimony, explaining that "the *ipse dixit* of the expert" need not be admitted. *EcoFactor*, 137 F.4th at 1341, 1346.

(1996) ("A district court by definition abuses its discretion when it makes an error of law.").[4]

Left uncorrected, the panel's reasoning supplies a playbook for evading apportionment in any case in which a patentee can locate a superficially related third-party portfolio license.[5] This danger is particularly acute in standard-essential-patent litigation (like here), where the incentive to substitute the value of an entire technology or standard for the incremental value of a few asserted claims is greatest, and where this Court has insisted that "the patentee's royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology." *Ericsson*, 773 F.3d at 1232.

The panel's decision wreaks havoc on this Court's damages precedent by making built-in apportionment the exception that swallows the rule. The Court should grant rehearing to avoid this outcome.

### B. The Zenith Licenses Are Not Sufficiently Comparable to the LG-Constellation Hypothetical Negotiation License

The Zenith licenses should never have cleared the comparability threshold as candidates for built-in apportionment. Built-in apportionment is available only

[4] The panel's criticism for not including Constellation's expert report in the appellate record is misplaced. Op. 30. The trial record, which LG cited in its appeal briefing, takes the place of expert reports following trial. *See Ortiz v. Jordan*, 562 U.S. 180, 184 (2011).

[5] Section I.B explains that the Zenith licenses have no legitimate connection to the LG-Constellation hypothetical negotiation.

where the prior license is "sufficiently comparable, in that principles of apportionment were effectively baked into the purportedly comparable license." *Omega*, 13 F.4th at 1377. Comparability is both a technical and an economic inquiry, and "a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). The panel held the threshold satisfied based on generalized technical and economic similarities that do not withstand scrutiny. Op. 30-31. The Zenith licenses differ from the hypothetical negotiation between LG and Constellation in every material dimension.

To start, the patents themselves are wholly different. None of the licensed Zenith patents overlap with those Constellation asserted at trial. The hypothetical negotiation concerned a license to the four related Constellation patents.[6] The Zenith portfolio, on the other hand, comprised an entirely different and far larger body of patents, organized across multiple patent families and many countries. Appx20276 (25:7-23); Appx20293 (94:10-15); Appx15551. A rate negotiated for that portfolio says nothing about the value the parties would have assigned to Constellation's nine claims asserted across the four patents it tried. *See Omega*, 13 F.4th at 1380-81 (explaining multi-patent portfolio licenses are not comparable to a hypothetical

---

[6] As discussed in Section II, the panel deemed two of the asserted patents ineligible under § 101, yet maintained the full damages award, reflecting further error with the panel's application of apportionment principles.

"single-patent license" absent an adequate accounting for the "substantial distinguishing facts").

Moreover, the relevant technologies are entirely different. The Zenith licenses used in the ATSC 1.0 standard are directed to VSB modulation, while Constellation's patents purportedly cover the ATSC 3.0 standard's non-uniform constellations. Those technologies are not only different, but wholly incompatible: ATSC 3.0 replaces VSB modulation with orthogonal frequency-division multiplexing, Appx20292 (91:5-6), employs different compression, *id.* (91:7-9), and is not backward compatible with ATSC 1.0. *Id.* (91:10-13). And where ATSC 1.0 uses *uniform* constellations, Constellation's asserted patents purportedly claim *non-uniform* constellations—the very feature Constellation alleges distinguishes its invention. Appx20238 (174:20-25); Appx20257 (251:5-9). The shared appearance of the letters "ATSC" in both standards' names cannot manufacture technical comparability any more than the shared word "telephone" makes a landline comparable to a modern cellular handset. *See ADASA Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022) (rejecting reliance on overbroad technology category). That is the "loose or vague" comparability that *LaserDynamics* forbids. 694 F.3d at 79.

The technical comparison the panel credited only confirms the point. The panel relied on Constellation's technical expert's testimony that the Zenith and

asserted patents recite "similar features" and "specific decoding methods," and achieve "similar technological benefits." Op. 30-31. But that comparison rested on generic, decades-old building blocks of any digital communication system—receivers, demodulators, demappers, and decoders—that Constellation's own named inventor conceded long predated the asserted patents. Op. 19.

The timing and the licensor are also different. Zenith, not Constellation, was the licensor and executed its licenses in 2004-2005, over 15 years before the 2020 hypothetical negotiation date. Appx20274 (17:16-22); Appx20290 (81:9-18); Appx20294 (97:16-20). And unlike Constellation, Zenith was an industry player that had manufactured products and substantially contributed to the standardization of ATSC 1.0. Appx20276 (25:9-23); Appx20183 (275:14-22); Appx20181-20182 (267:12-22, 268:25-269:4). The economic posture of a longtime industry participant licensing technology it helped create bears little resemblance to a hypothetical negotiation involving a non-practicing patentee and a later, different technology and standard. Those are precisely the differences in "the technologies and economic circumstances of the contracting parties" that a patentee invoking a prior license must account for before the license may be treated as comparable. *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014).

The licensed products and geographic scope are different as well. The Zenith licenses swept in a broad range of consumer electronics—not only televisions but

also computers, cable boxes, video recorders, camcorders, converter boxes, set-top boxes, and satellite boxes—and reached sales in the United States, Canada, and Mexico. Appx20293 (94:21-95:1, 96:3-21); Appx20294 (97:7-11). The hypothetical negotiation, by contrast, concerned only the accused ATSC 3.0 televisions and United States rights. Even for televisions, the accused smart televisions differ markedly from the mid-2000s sets the Zenith licenses covered, including in their capacity to stream content over the internet. Appx20290-20291 (83:13-85:9, 86:4-19). A portfolio rate negotiated across that far broader array of products and three national markets cannot, without apportionment, reflect the value the parties would have assigned to a single product category accused in the United States alone. Constellation needed to account for that mismatch, not paper over it with a generalized assertion that both settings involved "televisions."

The economic similarities the panel credited fare no better. For instance, the panel pointed to Sullivan's testimony that "the parties were similarly situated." Op. 31. But that equivalence is illusory: Zenith created the licensed VSB technology and helped standardize ATSC 1.0, whereas Constellation made no products and did not contribute to ATSC 3.0. Surface-level similarities do not establish that the negotiators of the Zenith licenses priced the value of Constellation's asserted patents. Regardless, economic similarities cannot rescue the deficient technical similarities,

as both are required. *See Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1319-20 (Fed. Cir. 2010).

These discrepancies are meaningful. They are differences in "the technologies and economic circumstances of the contracting parties" that a patentee invoking a license must "account for," but Constellation's experts did not do so. *Rex Med.*, 156 F.4th at 1296 (quoting *VirnetX*, 767 F.3d at 1330). At most they identified the differences, like the expert in *Omega*, but "merely identif[ying]" differences is not enough. 13 F.4th at 1381. The panel nonetheless accepted Sullivan's recitation of boilerplate economic similarities—a running royalty, coverage of some of the same products (televisions), a term extending through the life of the patents, non-exclusivity, and a United States sales nexus—as proof of comparability. Op. 31. Those features are common to countless licenses and say nothing about whether the Zenith rate reflects the value of Constellation's asserted patents.

Comparability is the gatekeeping condition on which the entire built-in-apportionment doctrine depends. If generic technical overlap and boilerplate license terms suffice, the apportionment mandate will soon become meaningless. This Court's most recent decisions confirm that comparable-license damages testimony must be policed with care. *See, e.g.*, *EcoFactor*, 137 F.4th at 1341; *Jiaxing*, 146 F.4th at 1112; *Rex Med.*, 156 F.4th at 1298. The panel's contrary approach conflicts

with that precedent and presents a question of exceptional importance warranting rehearing.

## II. The Panel's Ineligibility Rulings Require Setting Aside the Damages Verdict

The panel further erred by not vacating the jury's lump-sum damages award—returned without allocating any portion to a specific patent—after holding more than half of the asserted claims (and all asserted claims for two of the four patents) ineligible under 35 U.S.C. § 101. Op. 22-23. The panel's basis for not setting aside the award is because Sullivan "testified that the value of Constellation's asserted patents was tied to the *technology* rather than any asserted patent or claim." Op. 31 n.4 (original emphasis). But this rationale only further exacerbates the one-size-fits-all error addressed in Section I.A. That is, the panel applied a single rate for an entire technology without regard to which or how many claims are infringed. As described above, a technology-wide valuation cannot sustain an award keyed to the claims actually tried.

This Court's precedent demonstrates the impermissibility of such a result. Where an appeal disposes of liability for some patents tied to a verdict, and "the jury rendered a single verdict on damages, without breaking down the damages attributable to each patent, the normal rule would require a new trial as to damages." *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007); *see also Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1351 (Fed.

Cir. 2019) (vacating damages award and remanding for new damages trial where subset of products were found non-infringing on appeal). There is no basis to depart from this default rule here, and doing so further fails to apply settled principles of apportionment. Because the jury returned a single verdict on damages spanning the surviving and now-ineligible claims alike, the already-flawed damages award must be set aside for this independent reason.[7]

Finally, the panel's forfeiture finding cannot stand. The panel found that LG had forfeited the argument that the damages award must be vacated if some of the challenged patents were deemed ineligible by raising it "for the first time" at oral argument in response to questioning. Op. 31 n.4. But this belies the very point of LG's appeal. A critical aspect of LG's appeal was that Constellation failed to apportion because of its one-size-fits-all theory. *See* Blue Br. 62-65. Moreover, LG sought ineligibility to defeat liability, and there can be no damages without liability. *See Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1376 (Fed. Cir. 2025). Vacatur is not a new argument requiring separate briefing; it is the natural and necessary consequence of LG's requested relief.

---

[7] The panel also indicated that "none of LG's witnesses disputed [Mr. Sullivan's] testimony" that the value of Constellation's asserted patents was tied to the technology and not particular patent claims. Op. 31 n.4. This averment fails to recognize LG's argument that a one-size-fits-all theory is impermissible. *See* Appx1343-44. Contrary witness testimony is not needed here because the damages theory that Constellation presented and the jury adopted is legally deficient on its face.

The forfeiture case the panel cited does not hold otherwise. There, the appellant asked this Court, for the first time at oral argument and in a mootness posture, to vacate portions of an agency decision—a request untethered to any preserved merits position. *ABS Glob., Inc. v. Cytonome/ST, LLC*, 984 F.3d 1017, 1027 (Fed. Cir. 2021). Here, LG successfully appealed on invalidity and appealed damages based on Constellation's failure to apportion to the asserted patent claims. Forfeiture does not fit the facts or posture of this case, and the panel's finding of forfeiture should be set aside.

## CONCLUSION

The Court should grant rehearing, vacate the Panel Opinion, and reverse the denial of judgment as a matter of law of no damages, or, in the alternative, remand to the district court for further proceedings on damages on the surviving claims.

Dated: June 29, 2026

Respectfully submitted,

*/s/ Michael J. McKeon*

Michael J. McKeon
Christian A. Chu
R. Andrew Schwentker
Michael J. Ballanco
Benjamin J. Christoff
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W.
Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070

Ashley A. Bolt
FISH & RICHARDSON P.C.
1180 Peachtree Street NE
21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5008

***Attorneys for Defendants-Appellants LG Electronics Inc., LG Electronics U.S.A., Inc., and LG Electronics Alabama, Inc.***

## CERTIFICATE OF SERVICE AND FILING

I certify that on June 29, 2026, I electronically filed the foregoing **COMBINED PETITION FOR PANEL REHEARING AND REHEARING EN BANC** of Defendants-Appellants LG Electronics Inc., LG Electronics U.S.A., Inc., and LG Electronics Alabama, Inc. using the Court's CM/ECF filing system. Counsel for Plaintiff-Appellee Constellation Designs, LLC were electronically served by and through the Court's CM/ECF filing system per Fed. R. App. P. 25 and Fed. Cir. R. 25(e).

*/s/ Michael J. McKeon*
Michael J. McKeon

**CERTIFICATE OF COMPLIANCE**

The **COMBINED PETITION FOR PANEL REHEARING AND REHEARING EN BANC** of Defendants-Appellants LG Electronics Inc., LG Electronics U.S.A., Inc., and LG Electronics Alabama, Inc. is submitted in accordance with the type-volume limitation of Fed. Cir. R. 32(b). The brief contains 3,899 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2). This brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman, 14 Point.

Dated: June 29, 2026

*/s/ Michael J. McKeon*
Michael J. McKeon