**No. 2024-1822**

In the

# United States Court of Appeals for the Federal Circuit

**CONSTELLATION DESIGNS, LLC,**
*Plaintiff-Appellee*,

v.

**LG ELECTRONICS INC., LG ELECTRONICS U.S.A., INC.,**

**LG ELECTRONICS ALABAMA INC.,**
*Defendant-Appellants*.

Appeal from the United States District Court for the Eastern District of Texas,

No. 2:21-cv-00448-JRG, Judge J. Rodney Gilstrap

**BRIEF OF THE ASSOCIATION FOR COMPETITIVE TECHNOLOGY (ACT) AND THE CONSUMER TECHNOLOGY ASSOCIATION (CTA) AS *AMICI CURIAE* IN SUPPORT OF THE DEFENDANTS' PETITION FOR PANEL REHEARING AND REHEARING EN BANC**

BRIAN SCARPELLI
ASSOCIATION FOR COMPETITIVE TECHNOLOGY
1401 K Street, NW
Suite 501
Washington, DC 20005
(517) 507-1446
bscarpelli@actonline.org
*Counsel for Amici Curiae*

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for amici certifies that:

1. The full names of the parties that I represent are the Association for Competitive Technology and the Consumer Technology Association
2. There are no real parties in interest of the party that I represent
3. There are no parent corporations or publicly held companies that own ten percent or more of the stock of the party that I represent
4. No other law firms, partners, or associates who have not entered an appearance in this appeal either appeared for the party that I represent in the originating court or are expected to so appear in this Court
5. I do not know of any case in this or any other court or agency that will directly affect or be directly affected by this Court's decision in this case
6. No disclosure regarding organizational victims in criminal cases or debtors or trustees in bankruptcy cases is required under Fed. R. App. P. 26.1(b) or (c).

July 13, 2026

*/s/ Brian Scarpelli*
BRIAN SCARPELLI

*Counsel for Amici Curiae*

## TABLE OF CONTENTS

**CERTIFICATE OF INTEREST** .......... **I**

**TABLE OF AUTHORITIES** .......... **IV**

**INTEREST OF AMICI CURIAE** .......... **1**

**SUMMARY OF ARGUMENT** .......... **1**

**ARGUMENT** .......... **3**

I. THE PANEL'S HOLDING CONFLICTS WITH THIS COURT'S "BUILT-IN APPORTIONMENT" PRECEDENT .......... 3

A. A Royalty Rate for an Entire Technology Is Inherently Unapportioned .......... 3

B. The "Built-In Apportionment" Doctrine Is a Narrow Exception and the Zenith Licenses Are Insufficient .......... 4

II. THE PANEL ERRED BY SUSTAINING AN UNDIFFERENTIATED DAMAGES AWARD AFTER INVALIDATING CLAIMS .......... 6

A. A Single, Undifferentiated Verdict Cannot Stand When a Significant Portion of the Claims Are Invalidated on Appeal .......... 6

B. The Panel's Forfeiture Finding Is Incorrect and Based on Its Error to Accept a "Technology-Wide" Rate .......... 7

III. THE PANEL ERRED IN CHARACTERIZING AND DISPOSING OF LG'S DAMAGES CHALLENGE .......... 8

A. LG Challenged a Legal Error, Not Merely the Sufficiency of the Evidence .......... 8

B. The Panel Improperly Confined Legal-Error Challenges to the *Daubert* Framework .......... 8

IV. THE PANEL'S DECISION THREATENS SMALL BUSINESSES THAT IMPLEMENT SEPS .......... 9

A. SEP Holders Will Leverage the Panel's Reasoning to Demand Royalties on the Entire Technology .................................................. 10

B. Small Technology Companies Cannot Afford to Litigate Apportionment, Making Them Vulnerable to Hold-Up and Supra-FRAND Royalties ........................................................................ 11

**CONCLUSION ........................................................................................ 12**

**CERTIFICATE OF COMPLIANCE ............................................................ 14**

## TABLE OF AUTHORITIES

### CASES

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007)........................... 11

*Brumfield, Tr. for Ascent Tr. v. IBG LLC*, 97 F.4th 854 (Fed. Cir. 2024)................... 3

*Constellation Designs v. LG Electronics*, No. 2024-1822 (Fed. Cir. Apr. 28, 2026) 2, 3, 6, 7

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014) .................. 2, 4, 5

*Garretson v. Clark*, 111 U.S. 120 (1884)................................................................. 3

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012) ... 5, 11

*Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024 (9th Cir. 2015) .......................... 10

*Microsoft Corp. v. Motorola, Inc.*, No. C10-1823, 2013 WL 2111217 ................... 10

*Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361 (Fed. Cir. 2021)... 2, 4, 5, 8, 9

*Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295 (Fed. Cir. 2007) 2, 7

*Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255 (Fed. Cir. 2013).................. 9

*WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407 (2018) ........................ 3

### OTHER AUTHORITIES

ACT | THE APP ASS'N, STATE OF THE APP ECONOMY (2022), https://actonline.org/wp-content/uploads/APP-Economy-Report-FINAL.pdf...... 1

David J. Teece & Edward F. Sherry, *A Public Policy Evaluation of RAND Decisions in the U.S. Courts*, 1 CRITERION J. ON INNOVATION 113 (2016)........................... 11

Eur. Comm'n, Commission Staff Working Document: Impact Assessment Report (Apr. 27, 2023) ......................................................................................... 12

Joachim Henkel, *Licensing Standard-Essential Patents in the IoT*, 51 RES. POL'Y 1, 7 (2022). ......................................................................................................... 12

Rasmus Larsen, *'NextGen' ATSC 3.0 still not supported in most TV models*, FLATPANELSHD (Feb. 25, 2026),

https://www.flatpanelshd.com/news.php?subaction=showfull&id=1772013678 11

William F. Lee & Mark A. Lemley, *The Broken Balance: How "Built-In Apportionment" and the Failure to Apply Daubert Have Distorted Patent Infringement Damages*, 37 HARV. J.L. & TECH. 255 (2024) ........................... 6, 10

## INTEREST OF AMICI CURIAE

The Association for Competitive Technology (ACT) is a global policy trade association for the small business technology developer community.[1] Our members include startups, app developers, and device manufacturers who implement industry standards (such as Wi-Fi and 5G) and rely on a fair, predictable licensing environment for standard-essential patents (SEPs). The value of the U.S. ecosystem ACT represents—the app economy—is approximately $1.8 trillion and is responsible for 6.1 million American jobs, while serving as a key driver of the $8 trillion internet of things (IoT) revolution.[2]

The Consumer Technology Association (CTA), as North America's largest technology trade association, is the tech sector. Our members are the world's leading innovators—from startups to global brands—helping support more than 17 million American jobs. CTA owns and produces CES®—the most powerful tech event in the world.

## SUMMARY OF ARGUMENT

The panel affirmed a damages award based on a "built-in apportionment"

---

[1] No counsel for any party wrote any part of this brief. No party other than amicus curiae's members contributed money that was intended to fund the preparation or submission of this brief. This brief is accompanied by a motion seeking leave to file.

[2] ACT | THE APP ASS'N, STATE OF THE APP ECONOMY (2022), https://actonline.org/wp-content/uploads/APP-Economy-Report-FINAL.pdf.

theory that cannot be reconciled with this Court's precedent. *Constellation Designs v. LG Electronics*, No. 2024-1822, slip op. at 31 (Fed. Cir. Apr. 28, 2026) ("Panel Op."). First, the panel accepted a "technology-wide" royalty rate that remains constant regardless of which patents or claims are infringed—a clear violation of the apportionment doctrine that this Court squarely rejected in *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1376–77 (Fed. Cir. 2021). Second, the panel erroneously expanded the narrow "built-in apportionment" exception by treating stale, third-party licenses—covering different patents and technology—as sufficiently comparable, without accounting for the "distinguishing facts" that the doctrine requires. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014). Third, the panel declined to vacate the jury's damages award after invalidating more than half of the asserted claims, contrary to the rule that when a portion of the liability supporting a lump-sum award is eliminated, the entire award should be vacated and remanded for a new trial. *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007).

For standards implementers, the consequences are severe. The panel's decision arms SEP holders with a playbook to evade apportionment by pointing to any superficially related portfolio license. Rehearing is necessary to reaffirm that damages must compensate for the use made of the invention, not for an entire technology divorced from the claims at issue.

# ARGUMENT

## I. THE PANEL'S HOLDING CONFLICTS WITH THIS COURT'S "BUILT-IN APPORTIONMENT" PRECEDENT

The Supreme Court and this Court have long required patentees to apportion their damages to the value of the patented invention. *See Garretson v. Clark*, 111 U.S. 120, 121 (1884); *Brumfield, Tr. for Ascent Tr. v. IBG LLC*, 97 F.4th 854, 877 (Fed. Cir. 2024). "[T]he bottom-line royalty 'must be apportion[ed] to [the value of the patented technology]—by separating out and excluding other value in economic products or practices.'" *Brumfield*, 97 F.4th at 877 (citation omitted). Apportionment prevents patentees from recovering damages for unpatented features, thereby ensuring royalties reflect the value of the actual patented contribution.

### A. A Royalty Rate for an Entire Technology Is Inherently Unapportioned

The panel accepted Constellation's damages expert's testimony that the value of Constellation's asserted patents "was tied to the *technology* rather than any asserted patent or claim." Panel Op. at 31 n.4 (original emphasis). This is a per se violation of the apportionment doctrine. A royalty rate that remains constant regardless of which patents or claims are infringed is, by definition, not a reflection of the incremental value of the specific rights being litigated. *See D-Link*, 773 F.3d at 1226 (a reasonable royalty must be "based on the incremental value that the

patented invention adds to the end product").

In *Omega*, this Court squarely rejected a damages theory where the patentee attempted to avoid the apportionment requirement by pointing to a flat per-unit rate that did not account for how many claims or patents were infringed. 13 F.4th at 1379–81. The Court held that a patentee relying on a license must show that the license actually attributes value to the specific asserted patent. *Id.* at 1380. Here, the Zenith portfolio rate was likewise "patent/claim-independent." *Id.* at 1379.

A license that remains constant regardless of which patents or claims are asserted cannot be apportioned. Such a royalty necessarily attributes value to something broader than the asserted invention, contrary to *Omega*'s requirement that the license attribute value to the specific asserted patent.

This is especially dangerous in the SEP context, where a single technology may be covered by thousands of patents held by dozens of entities. If each patentee can claim that its royalty is "tied to the technology," the aggregate royalties could become insurmountable. Standards should promote interoperability and innovation, not become vehicles for collecting undifferentiated taxes on entire technologies.

### B. The "Built-In Apportionment" Doctrine Is a Narrow Exception and the Zenith Licenses Are Insufficient

This Court has recognized a narrow "built-in apportionment" doctrine, which allows reliance on a comparable license without further apportionment only when

"the principles of apportionment were effectively baked into the purportedly comparable license." *Omega*, 13 F.4th at 1376–77 (citation omitted). Where the license does not, there is nothing "built-in," and ordinary apportionment principles apply. *Id.* at 1377.

The panel expanded this doctrine beyond its recognized limits, ignoring the "distinguishing facts" that the doctrine requires a patentee to apportion away. *See D-Link*, 773 F.3d at 1227 ("Testimony relying on licenses must account for such distinguishing facts when invoking them to value the patented invention"). Here, the licenses involved a different licensor (Zenith), were negotiated over fifteen years earlier, and covered a different technology standard (ATSC 1.0 vs. ATSC 3.0). The panel accepted superficial similarities, such as the fact that both standards were used in televisions, as sufficient, effectively gutting the requirement for a meaningful connection between the license and the asserted patents. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) ("a loose or vague comparability between different technologies or licenses does not suffice").

The panel's approach also ignores the economic reality that license agreements are often structured for strategic reasons unrelated to the value of the patented technology. Patentees—particularly non-practicing entities that acquire patents for monetization—have an incentive to structure agreements to include

terms that may help them assert the patent against other defendants.[3] For instance, a patentee may settle with a small defendant for a modest payment but structure the license with a high royalty rate to use against future defendants.[4] Allowing such strategically crafted rates to serve as a substitute for apportionment without scrutiny invites manipulation and undermines the fairness of the damages determination.

## II. THE PANEL ERRED BY SUSTAINING AN UNDIFFERENTIATED DAMAGES AWARD AFTER INVALIDATING CLAIMS

The panel compounded its apportionment error by refusing to vacate the jury's single, undifferentiated damages award after holding more than half of the asserted claims ineligible. Panel Op. at 22–23.

### A. A Single, Undifferentiated Verdict Cannot Stand When a Significant Portion of the Claims Are Invalidated on Appeal

The jury returned a single damages amount for all asserted patents and claims. Now, the panel has held that claims in two of the four asserted patents are invalid yet upholds the damages award. Panel Op. at 32. Precedent dictates that when a portion of the liability supporting a lump-sum damages award is eliminated on appeal, the entire damages award must be vacated and remanded for a new trial on damages for

---

[3] *See* William F. Lee & Mark A. Lemley, *The Broken Balance: How "Built-In Apportionment" and the Failure to Apply Daubert Have Distorted Patent Infringement Damages*, 37 HARV. J.L. & TECH. 255, 286 (2024).

[4] *Id.*

the surviving claims. *Verizon*, 503 F.3d at 1310.

### B. The Panel's Forfeiture Finding Is Incorrect and Based on Its Error to Accept a "Technology-Wide" Rate

The panel's "forfeiture" finding in footnote 4 is a clear error. Panel Op. at 31 n.4. LG did not need to separately argue for vacatur because it is the automatic and logical consequence of its successful appeal on patent eligibility. The panel's justification—that LG raised it "for the first time at oral argument"—is legally insufficient. Vacatur is the natural consequence of the relief LG requested after a successful liability challenge.

Moreover, the panel's reliance on the expert's "technology-wide" testimony to uphold the award highlights the original error: the damages were never properly tied to the specific claims in the first place. If damages were tied to the technology rather than the asserted claims, invalidating five out of nine claims from two of the four patents should have no effect on the total—which illustrates the error. The entire damages theory was built on an unapportioned, claim-independent foundation that *Omega* forbids.

At minimum, the Court should delete the latter portion of footnote 4, regarding the value being tied to the technology, which is clearly dicta after the waiver finding in the first part of the footnote. The panel's observation is an unnecessary and erroneous commentary on the merits of the damages theory that

the panel itself declined to review.

## III. THE PANEL ERRED IN CHARACTERIZING AND DISPOSING OF LG'S DAMAGES CHALLENGE

### A. LG Challenged a Legal Error, Not Merely the Sufficiency of the Evidence

LG's appeal argued that the legal framework for calculating damages—relying on stale, third-party portfolio licenses without apportionment—was fundamentally flawed and should have been excluded. LG challenged the admissibility and legal validity of the expert's theory, not merely the weight of the evidence. Allowing such a legally deficient theory to reach the jury is an error of law that cannot be cured by a sufficiency-of-evidence review.

This Court has recognized that challenges to the "admissibility of . . . expert testimony," including "whether [a] damages model is properly tied to the facts of the case," "should be resolved under the framework of . . . *Daubert*." *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1264 (Fed. Cir. 2013). But the panel declined to review the legal-error challenge under *Daubert* because LG did not present separate, redundant arguments or cite an expert report in the appendix. This circular and narrow reading creates a trap for litigants and elevates procedure over substance.

### B. The Panel Improperly Confined Legal-Error Challenges to the *Daubert* Framework

A challenge to the legal basis of a damages award can be raised under both *Daubert* (to exclude the testimony) and JMOL (to challenge the legal sufficiency of

the evidence, which cannot be sufficient if it is based on an incorrect legal standard). *See, e.g., Omega*, 13 F.4th at 1375–81 (reviewing legal error in damages methodology under JMOL). By declining to review LG's challenge as a JMOL issue and then declining to review it under *Daubert* for procedural reasons, the panel effectively insulated the district court's error from appellate review.

An error in the legal framework of the damages theory is a question of law that warrants review. The panel's reasoning severely restricts review of legally erroneous damages methodologies.

## IV. THE PANEL'S DECISION THREATENS SMALL BUSINESSES THAT IMPLEMENT SEPS

The practical consequences of the panel's decision extend far beyond the immediate parties. For the thousands of small technology companies that implement SEPs, the panel's validation of a technology-wide royalty rate based on a superficially related third-party portfolio license creates a powerful new tool for patent holders to demand supra-competitive royalties. The result is higher prices, reduced innovation, and possible business failures.[5]

[5] *See* Lee & Lemley, *supra* note 3, at 270 ("A product company facing realistic possibility of having to defend against extraordinary damages…must earmark funds to defend against and potentially pay unreasonable damages. This can result in costs being passed on to the consumer in the form of higher prices, diminished funds, and reduced incentives for investment in research and development.").

### A. SEP Holders Will Leverage the Panel's Reasoning to Demand Royalties on the Entire Technology

SEP licensing is already fraught with power imbalances. SEP holders often demand royalties on a multicomponent device's selling price even when the patented technology reads only on a single chip or module, producing demands far above judicially determined FRAND rates.[6]

Under existing law, inflated demands are tempered by apportionment requirements. *See LaserDynamics*, 694 F.3d at 67–68. The panel's "technology-wide" valuation erases that tempering. *Constellation* offers a roadmap for sidestepping apportionment: locate a third-party portfolio license, assert that it covers "the technology" at issue, and apply that rate without further analysis—regardless of how many patents are in the portfolio, how many are asserted, or how dissimilar the technologies may be. This leads to the hold-up that FRAND commitments and the apportionment doctrine were designed to prevent. *See Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 310–14 (3d Cir. 2007).

The repercussions of this decision are already visible. LG has already removed ATSC 3.0 compatibility from all its televisions sold in the United States as a result,

[6] *See* David J. Teece & Edward F. Sherry, *A Public Policy Evaluation of RAND Decisions in the U.S. Courts*, 1 CRITERION J. ON INNOVATION 113, 119 n. 42, 128 (2016), available at https://tinyurl.com/4mt4xpwn (finding a judicially determined FRAND rate was over 200 times more than what patentee offered).

and adoption of the standard has been noticeably chilled.[7] The panel's decision threatens to derail the adoption of next-generation broadcast technology altogether.

### B. Small Technology Companies Cannot Afford to Litigate Apportionment, Making Them Vulnerable to Hold-Up and Supra-FRAND Royalties

Large companies may absorb the cost of litigating flawed damages theories. For a small innovator, however, a negotiation under the *Constellation* precedent can be existential. A small technology company may have little choice but to accept an inflated royalty or exit the market; it cannot spend millions on expert discovery, depositions, motions, and potential appeals simply to exclude an unreliable methodology.

The consequences are not theoretical. An assessment found that thirty-eight percent of SEP implementors—disproportionately small and medium-sized enterprises—reported that licensing costs were so high they could force them "out of business/change business."[8] As one startup founder explained: "There is no way for us

---

[7] Rasmus Larsen, *'NextGen' ATSC 3.0 still not supported in most TV models*, FLATPANELSHD (Feb. 25, 2026), https://www.flatpanelshd.com/news.php?subaction=showfull&id=1772013678 (stating that ASTC 3.0 "continues to struggle for widespread adoption" and "momentum has since slowed or even reversed.").

[8] See EUR. COMM'N, COMMISSION STAFF WORKING DOCUMENT: IMPACT ASSESSMENT REPORT at 15 (Apr. 27, 2023).

to fight it, we are too small to take on a large organization."[9] Another respondent explained that evaluating a licensing demand would "delay my own innovation … and add a lot of cost I cannot afford."[10]

## CONCLUSION

The Court should grant a rehearing to resolve whether a damages expert may base a reasonable royalty on a flat, technology-wide rate derived from a third-party's decades-old portfolio license to incompatible patents, without any showing that the rate reflects the value of the claims actually asserted. The panel's decision dismantles the apportionment protections that keep SEP licensing fair. By accepting a claim-independent royalty rate as a substitute for apportionment, the panel weakens the safeguards against patent hold-up and increases the risk that implementers will face supra-FRAND royalty demands on their entire product revenues. Amicus respectfully requests that the Court grant the petition for panel rehearing or rehearing en banc.

Respectfully submitted,

Dated: July 13, 2026 /s/*Brian Scarpelli*
BRIAN SCARPELLI
ASSOCIATION FOR COMPETITIVE TECHNOLOGY

---

[9] Joachim Henkel, *Licensing Standard-Essential Patents in the IoT*, 51 RES. POL'Y 1, 7 (2022).

[10] *Id.* at 6.

1401 K Street, NW
Suite 501
Washington, DC 20005
(517) 507-1446
bscarpelli@actonline.org

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel for amicus curiae certifies that this brief:

(1) complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and Federal Circuit Rule 29(b) because it contains 2,596 words, including footnotes and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b); and

(2) complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because this document has been prepared using Microsoft Office Word and is set in the Times New Roman font in a size equivalent to 14 points or larger.

Dated: July 13, 2026

/s/*Brian Scarpelli*
Brian Scarpelli
*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 13th day of July, 2026, I filed the foregoing with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

Dated: July 13, 2026

/s/*Brian Scarpelli*

BRIAN SCARPELLI
ASSOCIATION FOR COMPETITIVE TECHNOLOGY
1401 K Street, NW
Suite 501
Washington, DC 20005
(517) 507-1446
bscarpelli@actonline.org

*Counsel for Amici Curiae*