No. 24-1822

IN THE

# United States Court of Appeals for the Federal Circuit

CONSTELLATION DESIGNS, LLC,

*Plaintiff-Appellee*

*v.*

LG ELECTRONICS INC., LG ELECTRONICS USA, INC., LG ELECTRONICS ALABAMA, INC.,

*Defendants-Appellants*

On Appeal from the United States District Court for the Eastern District of Texas in Case No. 2:21-cv-00448-JRG

**BRIEF OF *AMICI CURIAE* NATIONAL ASSOCIATION OF BROADCASTERS AND PEARL TV IN SUPPORT OF COMBINED REHEARING PETITION OF DEFENDANTS-APPELLANTS**

Richard A. Kaplan
rkaplan@nab.org
Nandu Machiraju
nmachiraju@nab.org
Alison G. Martin
amartin@nab.org
NATIONAL ASSOCIATION OF BROADCASTERS
1 M Street, SE
Washington, DC 20003
Phone: (202) 429-5348

Gerard J. Waldron
gwaldron@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001
Phone: (202) 662-5360

*Counsel for Amici Curiae*

July 13, 2026

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-1822

**Short Case Caption** Constellation Designs, LLC v. LG Electronics Inc.

**Filing Party/Entity** Amicus Curiae Pearl TV

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/13/2026

Signature: /s/ Gerard J. Waldron

Name: Gerard J. Waldron

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Pearl TV | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** No. 24-1822

**Short Case Caption** Constellation Designs, LLC v. LG Electronics, Inc.

**Filing Party/Entity** National Association of Broadcasters and Pearl TV

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/13/2026

Signature: /s/ Gerard J. Waldron

Name: Gerard J. Waldron

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☑ None/Not Applicable |
| National Association of Broadcasters | | |
| Pearl TV | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

INTEREST OF *AMICI CURIAE* ........ 1

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. Next Gen TV Is Transformative for Broadcasters. ........ 2

II. The Transition to Next Gen TV Is at a Critical Stage. ........ 4

III. Receiver Adoption Has Fallen Short of Early Projections. ........ 5

IV. Receiver Economics Matter to the Success of the Transition. ........ 8

CONCLUSION ........ 11

STATEMENT OF CONSENT ........ 13

CERTIFICATE OF COMPLIANCE ........ 14

CERTIFICATE OF SERVICE ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Administrative Agency Materials**

Authorizing Permissive Use of the "Next Generation" Broadcast Television Standard, Fifth Further Notice of Proposed Rulemaking, 40 FCC Rcd. 8493 (2025) ........ 1, 4, 5, 8

Authorizing Permissive Use of the "Next Generation" Broadcast Television Standard, Third Report and Order and Fourth Further Notice of Proposed Rulemaking, 38 FCC Rcd. 6409 (2023) ........ 1, 2

Letter from Rick Kaplan, Chief Legal Officer & Executive Vice President, NAB, to Marlene H. Dortch, Secretary, FCC, MB Docket No. 16-142 (filed Jan. 17, 2025) ........ 6

Reply Comments of the National Association of Broadcasters, MB Docket No. 16-142 (filed Sept. 6, 2022) ........ 6

Comments of LG Elecs. USA Inc., *In re* Authorizing Permissive Use of the "Next Generation" Broadcast Television Standard, GN Docket No. 16-142 (FCC filed Sept. 15, 2023) ........ 7

**Other Authorities**

A3SA, Secure Content Distribution at Heart of New ATSC 3.0 Receivers for Consumers and Broadcasters (Apr. 17, 2026) ........ 6, 7

Luke Zarrell, *Samsung Again Stops Selling ATSC 3.0 Tuners In Its OLED TVs*, Cord Cutters News (Feb. 19, 2026) ........ 7

Avanci Broadcast, https://www.avanci.com/broadcast/ (last visited July 8, 2026) ........ 9

Via LA, https://www.via-la.com/licensing-programs/atsc-3-0/ (last visited July 8, 2026) ........ 9

Pearl TV, *Broadcasting Industry Launches NEXTGEN TV Converter Box Program to Deliver Low-Cost Upgrade Option for Millions of Over-the-Air TV Viewers* (Apr. 16, 2026) ........ 10

## INTEREST OF *AMICI CURIAE*[1]

The National Association of Broadcasters (NAB) is a non-profit, incorporated association of radio and television stations and broadcasting networks. NAB represents the American broadcasting industry before Congress, the courts, the Federal Communications Commission (FCC or Commission), and other governmental bodies. Among other activities, NAB contributes to the development of technology standards used by broadcasters, including the Advanced Television Systems Committee (ATSC) suite of standards. NAB does not normally opine on matters relating to patent royalties. Our member stations, however, are vitally concerned about the completion of an industry-wide transition to ATSC 3.0 (also known as Next Gen TV).

Pearl TV is a business organization of major television broadcast companies with a shared interest in developing new broadcast technologies, including NEXTGEN TV™. Pearl TV's member companies operate more than 768 television stations serving over 78% of the U.S. population. Pearl coordinates deployment of Next Gen TV among broadcasters and works with manufacturers, retailers, and other industry participants to facilitate the successful rollout of ATSC 3.0, which includes

[1] No counsel for any party authored this brief in whole or in part, and no entity or person, aside from *Amici*, their members, or their counsel, made any monetary contribution intended to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

the development of a converter device to enable viewing of ATSC 3.0 with existing televisions.

Plaintiff-Appellee Constellation Designs, LLC and Defendants-Appellees LG Electronics Inc., LG Electronics USA, Inc., LG Electronics Alabama, Inc. have consented to the filing of this brief.

## INTRODUCTION

This appeal arises against the backdrop of an ongoing nationwide transition to Next Gen TV, the first major modernization of over-the-air television since the transition from analog to digital broadcasting, which concluded in 2009. Broadcasters across the country have invested substantial resources to deploy the new standard, and the Federal Communications Commission (FCC) is now actively considering the final steps necessary to complete the transition.

The pace of the transition depends on several factors, including broadcaster investment, receiver availability, consumer adoption, and the economic incentives facing manufacturers. Manufacturers' decisions regarding whether and how broadly to incorporate ATSC 3.0 capability into their products are influenced by many factors, including the economic costs of implementing the standard. As the FCC has recognized, receiver availability and licensing of ATSC 3.0 standard-essential patents remain important issues as the transition continues. *See* Authorizing Permissive Use of the "Next Generation" Broadcast Television Standard, Fifth Further Notice of Proposed Rulemaking, 40 FCC Rcd. 8493, 8508 ¶ 38 (2025) ("Fifth Further Notice"); Authorizing Permissive Use of the "Next Generation" Broadcast Television Standard, Third Report and Order and Fourth Further Notice of Proposed Rulemaking, 38 FCC Rcd. 6409, 6442, ¶ 50 (2023).

*Amici* submit this brief to offer the Court the perspective of broadcasters and the organizations leading the industry's transition to ATSC 3.0 concerning the practical significance of receiver economics within the broader television ecosystem. Since this litigation began, industry expectations regarding receiver adoption have moderated substantially, manufacturer participation has been more limited than anticipated, and the transition has entered a critical implementation phase. The outcome of this litigation is our focus, and *Amici* leave to Defendants-Appellants the important patent-law questions presented by this appeal. We underscore that the Court's resolution of the damages issues presented in this appeal will have consequences extending beyond the parties to this case.

For these reasons, and for the reasons stated by Defendants-Appellants, *Amici* urge the Court to grant Defendants-Appellants' petition for panel rehearing or rehearing *en banc*, vacate the damages award, and remand for further proceedings.

## ARGUMENT

### I. Next Gen TV Is Transformative for Broadcasters.

Local broadcasters play a unique role in American communities as trusted sources of news, emergency information, weather, sports, and entertainment. To preserve and strengthen that role in a changing media marketplace, broadcasters

must modernize the over-the-air television platform on which local broadcast service depends.

Next Gen TV, or ATSC 3.0, is the first major modernization of the nation's over-the-air television transmission system since the transition from analog to digital television nearly three decades ago. For broadcasters, ATSC 3.0 is not simply an upgrade for its own sake. It is a path to continued competitiveness with other video and information services, new capabilities for delivering advanced emergency information to the public, and more efficient use of limited broadcast spectrum.

ATSC 3.0 is the product of years of collaborative standards development among broadcasters, manufacturers, and other stakeholders. The transition to ATSC 3.0 requires coordinated investment and implementation by broadcasters, equipment manufacturers, standards developers, receiver manufacturers, retailers, and other participants throughout the broadcast ecosystem. Broadcasters across the country have invested substantial resources to deploy ATSC 3.0 service, including by replacing or upgrading transmission equipment, coordinating deployments across markets, and developing new broadcast capabilities based on the standard. Those investments were made with the expectation that compatible receiving equipment would become increasingly available as the transition progressed.

Unlike many consumer technologies, broadcasters cannot complete this transition through their own investments alone. The success of ATSC 3.0 depends

on a functioning marketplace for compatible television receivers and other reception devices. As broadcasters expand deployment, manufacturers must determine whether and how broadly to incorporate ATSC 3.0 capability into their products.

Broadcasters remain firmly committed to completing the nationwide transition to ATSC 3.0 and continue to invest in new facilities, services, and consumer offerings. The question presented here is not whether that transition will continue, but whether unnecessary economic uncertainty will make it slower or more costly than it needs to be. Against that backdrop, the economics of receiver manufacturing warrant careful attention.

## II. The Transition to Next Gen TV Is at a Critical Stage.

The ATSC 3.0 transition has progressed from early deployment to a critical implementation phase. Broadcasters now provide a Next Gen TV signal to most American households, but the transition remains incomplete until, *inter alia*, all consumers have a device that receives that signal. Successfully completing the transition will require continued investment throughout the broadcast ecosystem, including by receiver manufacturers and consumers.

Recognizing that the transition has reached this stage, the FCC recently initiated a rulemaking to consider the steps necessary to complete the nation's transition to ATSC 3.0. *See Fifth Further Notice*. In the *Fifth Further Notice*, the Commission seeks comment on several issues, including how to ensure that

consumers have meaningful access to compatible receiving equipment. *Id*. ¶¶ 29-35. The Commission also identified licensing of ATSC 3.0 standard-essential patents as an issue warranting continued attention. *Id*. ¶ 38.

The Commission's focus reflects the practical reality that widespread broadcaster deployment alone cannot complete the transition. As broadcasters continue investing in ATSC 3.0 facilities and services, the pace of the transition will also depend on a healthy market for compatible receivers. The availability, affordability, and breadth of receiver offerings are therefore important considerations in determining how quickly the transition can be completed.

This brief does not ask the Court to resolve communications policy or opine on the FCC's pending rulemaking. Rather, *Amici* offer this regulatory and marketplace context to explain why the economics surrounding ATSC 3.0 receivers have significance beyond the parties to this litigation and why the trial court's damages award is dramatically out of proportion to the licensing economics that have supported deployment of the ATSC 3.0 standard.

## III. Receiver Adoption Has Fallen Short of Early Projections.

The transition to ATSC 3.0 depends not only on broadcaster deployment, but also on the widespread availability and consumer adoption of compatible television receivers. When ATSC 3.0-compatible televisions first entered the marketplace,

equipment industry participants anticipated rapid growth in receiver adoption as manufacturers incorporated ATSC 3.0 capability across their product lines.

Since the outset of the ATSC 3.0 transition, expectations regarding receiver adoption have changed substantially. In 2022, CTA projected that approximately 58 million ATSC 3.0-capable television sets would be sold cumulatively through the end of 2025. *See* Reply Comments of the National Association of Broadcasters, MB Docket No. 16-142, at 3 (filed Sept. 6, 2022) (citing CTA forecast). In the year following the trial verdict in this case, CTA reduced that projection to approximately 21.8 million cumulative sets through the end of 2025. *See* Letter from Rick Kaplan, Chief Legal Officer & Executive Vice President, NAB, to Marlene H. Dortch, Secretary, FCC, MB Docket No. 16-142, Attach. at 6 fig. 1 (filed Jan. 17, 2025) (Future of Television Initiative Report reproducing CTA July 2024 forecast). More recent industry reports indicate that approximately 18.5 million Next Gen TV television sets had been sold by early 2026. *See* A3SA, Secure Content Distribution at Heart of New ATSC 3.0 Receivers for Consumers and Broadcasters (Apr. 17, 2026) (reporting that approximately 18.5 million A3SA-enabled televisions had been sold).

These changes in projected receiver adoption have been triggered by changes in manufacturer behavior. LG, once one of the principal manufacturers of ATSC 3.0-capable televisions in the United States, discontinued inclusion of ATSC 3.0

capability in U.S. televisions in the aftermath of the trial court decision. Comments of LG Elecs. USA Inc., *In re* Authorizing Permissive Use of the "Next Generation" Broadcast Television Standard, GN Docket No. 16-142 (FCC filed Sept. 15, 2023). Other manufacturers likewise have not expanded ATSC 3.0 capability across their product lines as anticipated or have reduced the number of U.S. television models that include ATSC 3.0 receivers.

While *Amici* do not contend that any single factor explains the pace of receiver adoption across the industry, clearly the trial court's calculation of damages in this case had a direct impact on LG's decision to halt sales of ATSC 3.0 receivers. And shortly after LG's decision, another manufacturer reduced its number of models with ATSC 3.0 capability. Luke Zarrell, *Samsung Again Stops Selling ATSC 3.0 Tuners In Its OLED TVs*, Cord Cutters News (Feb. 19, 2026), https://cordcuttersnews.com/samsung-again-stops-selling-atsc-3-0-tuners-in-its-oled-tvs/. The FCC has recognized that receiver availability and standard-essential patent licensing remain important considerations as the industry works to complete the transition. *See Fifth Further Notice* ¶ 18.

These developments underscore that continued attention to receiver economics and licensing costs remain important as the industry works toward broad consumer adoption. Expectations for receiver deployment have moderated substantially, manufacturer participation has been more limited than anticipated, and

the marketplace remains sensitive to the economic conditions surrounding implementation of the ATSC 3.0 standard. Those developments provide important context for understanding why receiver economics matter to the successful completion of the transition.

**IV. Receiver Economics Matter to the Success of the Transition.**

Manufacturers must determine years in advance which technologies to incorporate into future product lines and therefore evaluate expected implementation costs long before consumers make purchasing decisions. The decision whether to incorporate ATSC 3.0 capability into a television receiver is influenced by many factors, including engineering complexity, manufacturing costs, and intellectual property licensing. Once incorporated into a product line, those decisions cannot readily be reversed without significant engineering, manufacturing, and commercial consequences. Manufacturers evaluate those considerations collectively when determining whether to include ATSC 3.0 functionality and how broadly to deploy it across their product lines.

For many years, manufacturers have been able to take a license to most of the intellectual property needed to implement the ATSC 3.0 standard through the Avanci Broadcast licensing platform. Avanci's published licensing program currently includes the standard-essential patent portfolios of fourteen licensors, which Avanci states collectively represent more than 80% of all declared ATSC 3.0 standard-

essential patents, at a published royalty at or below $3 per television. *See* Avanci Broadcast, https://www.avanci.com/broadcast/ (last visited July 8, 2026). Similarly, the Via LA pool covers another group of patents from 14 licensors and is available for $0.30 per unit. *See* Via LA, https://www.via-la.com/licensing-programs/atsc-3-0/ (last visited July 8, 2026).

Against that backdrop, the damages award at issue in this case would impose a royalty of **$6.75 per television** for a single patent portfolio – *more than twice the published royalty manufacturers currently pay for access to most of the declared ATSC 3.0 standard-essential patents* through the Avanci Broadcast platform. *Amici* leave to Defendant-Appellants and others the legal critique of the damages award, but as participants in the ATSC 3.0 ecosystem, *Amici* view the award as out of proportion with other standards-essential patent royalties. That observation illustrates why manufacturers beyond Defendant-Appellants may view the trial court's decision as economically significant when deciding whether and how broadly to deploy ATSC 3.0 capability.

Those economic effects are particularly significant as the industry seeks to expand the availability of lower-cost receiving devices. Pearl has recently worked with various equipment stakeholders to develop low-cost converter devices (for $60 or less) intended to provide consumers with access to Next Gen TV without requiring the purchase of a new television. *See* Pearl TV, *Broadcasting Industry*

*Launches NEXTGEN TV Converter Box Program to Deliver Low-Cost Upgrade Option for Millions of Over-the-Air TV Viewers* (Apr. 16, 2026), https://pearltv.com/news/broadcasting-industry-launches-nextgen-tv-converter-box-program-to-deliver-low-cost-upgrade-option-for-millions-of-over-the-air-tv-viewers/. Recognizing the importance of those devices to the continued transition, Avanci recently announced a reduced royalty (from its current rate of $3) specifically for that class of products. Viewed against that backdrop, a fixed royalty obligation of $6.75 per device represents a substantial economic burden that is especially great in the low-cost segment of the market. It also reveals that the trial court's decision is not in line with other patents in the ATSC 3.0 environment.

*Amici* submit that receiver economics are an important part of the factual context surrounding an ongoing nationwide technology transition. Broadcasters have already made substantial and continuing investments in deploying ATSC 3.0 and remain firmly committed to completing the transition. As the industry works toward that goal, preserving a healthy and affordable marketplace for ATSC 3.0 receivers remains an important consideration for broadcasters, manufacturers, and the viewing public. Because the economics of receiver deployment bear directly on the ongoing ATSC 3.0 transition, we urge the Court to consider those practical consequences in considering this petition and, ultimately, in resolving the issues in this appeal.

## CONCLUSION

For the foregoing reasons, and for the reasons stated by Defendants-Appellants, this Court should grant Defendants-Appellants' petition for panel rehearing or *en banc* rehearing, vacate the damages award, and remand for further proceedings.

Dated: July 13, 2026

Respectfully submitted,

*/s/ Richard A. Kaplan*
Richard A. Kaplan
rkaplan@nab.org
Nandu Machiraju
nmachiraju@nab.org
Alison G. Martin*
amartin@nab.org
NATIONAL ASSOCIATION OF BROADCASTERS
1 M Street, SE
Washington, DC 20003
Phone: (202) 429-5348

** Not admitted to the District of Columbia Bar. Practice limited pursuant to D.C. App. R. 49(c)(3).*

*Counsel for Amicus Curiae National Association of Broadcasters*

*/s/ Gerard J. Waldron*
Gerard J. Waldron
gwaldron@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001
Phone: (202) 662-5360

*Counsel for Amicus Curiae Pearl TV*

## STATEMENT OF CONSENT

Pursuant to Federal Circuit Rule 32(g)(3(b), the undersigned represents that counsel for the National Association of Broadcasters has consented to his signature on the foregoing Brief and Certificate of Interest.

*/s/ Gerard J. Waldron*
Gerard J. Waldron

## CERTIFICATE OF COMPLIANCE

1. This Brief complies with the type-volume limitation of Federal Circuit Rule 40(i) because it contains 2,341 words, excluding the parts of the Motion exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).

2. This Brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because it has been prepared using 14-point Times New Roman font in Microsoft Word for Microsoft 365 MSO Version 2605.

Dated: July 13, 2026

*/s/ Gerard J. Waldron*
Gerard J. Waldron

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: July 13, 2026

*/s/ Gerard J. Waldron*
Gerard J. Waldron

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-1822

**Short Case Caption** Constellation Designs, LLC v. LG Electronics Inc.

**Filing Party/Entity** Amicus Curiae Pearl TV

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/13/2026

Signature: /s/ Gerard J. Waldron

Name: Gerard J. Waldron

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Pearl TV | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** No. 24-1822

**Short Case Caption** Constellation Designs, LLC v. LG Electronics, Inc.

**Filing Party/Entity** National Association of Broadcasters and Pearl TV

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 07/13/2026

Signature: /s/ Gerard J. Waldron

Name: Gerard J. Waldron

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| National Association of Broadcasters | | |
| Pearl TV | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |